UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

RONALD L. JENSEN,

Petitioner,

v.

MR. TIMOTHY O'DELL,
Warden Prairie Corr. Facility,

Respondent.

---

Civil No. 01-851 (JRT/SRN)

**REPORT AND RECOMMENDATION**

THIS MATTER is before the undersigned United States Magistrate Judge on Petitioner's Amended Petition for habeas corpus relief pursuant to 28 U.S.C. § 2241.[1] The matter has been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it is recommended that the Amended Petition for writ of habeas corpus be SUMMARILY DISMISSED, pursuant to Rule 4 of The Rules Governing Section 2254 Cases In The United States District Courts.[2]

---

[1] Petitioner's original petition, (Docket No. 1), was returned to him by order dated May 23, 2001, (Docket No. 3), because it was not submitted on the prescribed form. See Local Rule 9.3. Petitioner was granted leave to file an Amended Petition, and he did so on September 26, 2001. (Docket No. 8.) Therefore, it is Petitioner's Amended Petition that is now before the Court.

[2] Rule 4 provides that "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." Although The Rules Governing Section 2254 Cases are most directly applicable to habeas petitions filed by state prisoners pursuant to 28 U.S.C. § 2254, they also may be applied to habeas cases brought under 28 U.S.C. § 2241. Rule 1(b); Bostic v. Carlson, 884 F.2d 1267, 1270, n.1, (9th Cir. 1989); Rothstein v. Pavlick, No. 90 C 5558 (N.D.Ill. 1990), 1990 WL 171789 at *3.

FILED OCT 25 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. BACKGROUND

Petitioner is an inmate at the Prairie Correctional Facility ("PCF"), a privately operated prison located in Appleton, Minnesota. He is serving a sentence imposed by the state circuit court for Kenosha County, Wisconsin, following his 1993 convictions for first and second degree sexual assault. (Amended Petition, p. 2, ¶s 1-4.)

Petitioner apparently began serving his sentence at a prison facility located in Wisconsin, and operated by the Wisconsin Department of Corrections. At some point, however, Petitioner was transferred to PCF. He is one of many Wisconsin prison inmates who have been transferred to out-of-state prison facilities in recent years. Because of overcrowding in its own facilities, the Wisconsin Department of Corrections has made contractual arrangements with institutions in other states to provide housing for Wisconsin inmates. PCF is one of the facilities that has agreed to accept and house Wisconsin prisoners.

In his present habeas corpus petition, Petitioner is not challenging the validity of his state criminal convictions or sentence. Instead, he is claiming that his transfer to PCF was illegal and unconstitutional, and that the warden at PCF therefore has no lawful right to detain him. As far as the Court can tell, Petitioner does not want to be transferred back to a Wisconsin prison; but rather, he is asking for an order that would grant him an outright release from custody.

Petitioner offers a convoluted mix of legal theories to support his request for a writ of habeas corpus. He contends that his transfer to PCF is

-- barred by the "Inter-state Corrections Compact;"

– a violation of Due Process;

– not authorized by any specific court order;

– not based on any State of Minnesota criminal conviction; and

– not authorized by the United States Constitution.

Petitioner further claims that by transferring him to PCF, the State of Wisconsin has, in effect, forfeited its legal authority to detain him, and cannot now take him back into custody. He therefore believes that he should simply be set free.

## II. DISCUSSION

Petitioner is not the first Wisconsin prisoner to challenge the legality of his transfer to PCF. During the past two years there have been at least a half-dozen other petitions filed in this District that have presented essentially the same claims that are presented by Petitioner here. Those claims have been universally rejected by every magistrate judge and district court judge who has considered them. The list of unsuccessful habeas actions brought by Wisconsin prisoners housed at PCF includes the following cases in which the prisoners' claims were rejected on the merits:

1. Adams v. Brill, No. 00-106 (ADM/JGL) – Report and Recommendation by Magistrate Judge Jonathan Lebedoff, adopted by District Court Judge Ann D. Montgomery;[3]

2. Templeton v. Brill, No. 00-403 (JRT/JGL) – Report and Recommendation by Magistrate Judge Jonathan Lebedoff, adopted by District Court Judge John R. Tunheim;

---

[3] Most of the arguments that have been commonly raised by Wisconsin prisoners seeking to be released from PCF, including the arguments raised by Petitioner here, were addressed in Magistrate Judge Lebedoff's Report and Recommendation in Adams. A copy of the Adams Report and Recommendation is attached hereto for Petitioner's edification.

3. Dumas v. Brill, No. 00-800 (DSD/AJB) – Report and Recommendation by Magistrate Judge Arthur J. Boylan, adopted by District Court Judge David S. Doty;

4. Neumeyer v. Brill, No. 00-786 (ADM/ESS) – Report and Recommendation by Magistrate Judge E.S. Swearingen, adopted by District Court Judge Ann D. Montgomery; and

5. Wangerin v. O'Dell, No. 00-2765 (MJD/ESS) – Report and Recommendation by Magistrate Judge E.S. Swearingen, adopted by District Court Judge Michael J. Davis.[4]

Thus, it is now well-settled in this District that Wisconsin prisoners who have been transferred to PCF have no legal or constitutional right to be released from custody merely because of their transfers. The Court can find no new argument in Petitioner's current application for habeas corpus relief that has not already been fully considered, and universally rejected. It would serve no useful purpose to enter an order to show cause in this matter, directing Respondent to file a return to the instant petition, because any such return would undoubtedly point to all of the other similar cases that have already been dismissed. Furthermore, if Respondent filed a return, joining the issues raised in the Amended Petition, this Court would ultimately submit a Report and Recommendation that would only repeat what other judges in this District have already written.

In short, it is readily apparent on the face of the instant petition that Petitioner is not entitled to a writ of habeas corpus. It is therefore recommended that this action be

---

[4] In at least two other cases, habeas petitions filed by Wisconsin prisoners at PCF were quickly rejected without ever reaching the merits of the petitioners' claims. See Gilpin v. Brill, 00-394 (DSD/FLN) and Bates v. Brill, 00-255 (DWF/RLE).

summarily dismissed pursuant to Rule 4 of the Governing Rules.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

Petitioner's Amended Petition seeking habeas corpus relief under 28 U.S.C. § 2241, (Docket No. 8), be SUMMARILY DISMISSED WITH PREJUDICE.

Dated: October 25, 2001

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

PAUL A. ADAMS,

Petitioner,

v.

HOYT A. BRILL, and
JON E. LITSCHER,

Respondents.

Civil File No. 00-106 (ADM/JGL)

**REPORT AND RECOMMENDATION**

Paul A. Adams, Prairie Correctional Facility, Box 500, Appleton, MN 56208, Petitioner, pro se.

Michael D. Oeser, Wisconsin Department of Justice, 123 W. Washington Avenue, PO Box 7857, Madison, WI, 53707, for Respondents.

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of District Court on the petition of Paul A. Adams for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondents have filed a motion and supporting memorandum asking the Court to dismiss the petition, (Docket Nos. 10 and 11), and Petitioner has filed various exhibits and memoranda in support of his application for habeas corpus relief. (Docket Nos. 2, 3, 12, 14, 20, and 37.) The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, the Court recommends that the petition for writ of habeas corpus be dismissed with prejudice.

FILED__________
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD__________
DEPUTY CLERK__________

## I. BACKGROUND

On July 12, 1999, Petitioner appeared in the Circuit Court for Washington County, Wisconsin, and entered a plea of "no contest" to state criminal charges of "party to a crime -- delivery non narcotic [and] driving while intoxicated third offense." He was sentenced to five years in state prison. (Petition, [Docket No. 1], p. (2), ¶s 1-4.)

Petitioner began serving his prison sentence in facilities that were located in Wisconsin and operated by the Wisconsin Department of Corrections. Sometime near the end of 1999, however, Wisconsin prison officials decided to transfer Petitioner to the Prairie Correctional Facility, ("PCF"), in Appleton, Minnesota. He apparently arrived at PCF in late December 1999 or early January 2000.

Petitioner is one of many Wisconsin prison inmates who have been transferred to out-of-state prison facilities in recent months. Because of overcrowding in its own facilities, the Wisconsin Department of Corrections has made contractual arrangements with institutions in other states to provide housing for Wisconsin inmates. PCF, a private prison operated by the Corrections Corporation of America, ("CCA"), is one of the facilities that has agreed to accept and house Wisconsin prisoners.

Shortly after arriving at PCF, Petitioner filed his present application for habeas corpus relief. He claims that the Warden at PCF, Hoyt Brill, cannot legally detain him and should be ordered to release him immediately. The petition lists nine grounds in support of Petitioner's demand for immediate release from custody:

(1) Petitioner's transfer to PCF constitutes an "extradition" to Minnesota, which was accomplished without due process and in violation of Article IV, Section 2, Clause 2 of the

Constitution;[1]

(2) Petitioner's transfer to PCF has deprived him of a constitutionally protected liberty interest without due process;

(3) Petitioner's transfer to PCF violates his right to due process because it is inconsistent with the sentencing judge's order that he be committed to "the Wisconsin Prison System;"

(4) Petitioner has been deprived of due process and equal protection because PCF lacks adequate legal resources for prisoners;

(5) Petitioner's transfer to PCF violates the "Rehabilitation Act," the "Americans With Disabilities Act," ("ADA"), the "Racketeer Influenced and Corrupt Organizations" Act, ("RICO"), and Wis.Stat. §§ 301.06 and 302.25(6);[2]

---

[1] Article IV, Section 2, clause 2 of the Constitution states that:

> "A Person charged in any State with Treason, Felony, or other Crime who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

[2] Wis.Stat. § 301.06 states:

> "Education and prevention. The department [of corrections] may do all of the following:
> (1) Develop and maintain education and prevention programs.
> (2) Study causes and methods of prevention and treatment of juvenile delinquency and related social programs. The department may utilize all powers provided by the statutes, including the authority to accept grants of money or property from federal, state, or private sources, and enlist the cooperation of other agencies and state departments."

Wis.Stat. § 302.25 is Wisconsin's adoption of the Interstate Corrections Compact. Subsection 302.25(6) is Article VI of the Compact, which provides as follows:

(6) Petitioner's transfer to PCF has resulted in a "seizure" of legally protected rights, in violation of the Fourth Amendment;

(7) Petitioner's constitutional right to equal protection has been violated by reason of his transfer to PCF, because PCF does not offer the same privileges and opportunities as those available to inmates at Wisconsin's state-operated prisons;

(8) Petitioner's incarceration at PCF constitutes a form of slavery, which is prohibited by the Thirteen Amendment; and

(9) Petitioner's continuing confinement at PCF violates all of the various legal and constitutional rights and principles mentioned in his first eight grounds for relief.[3]

For the reasons discussed below, the Court concludes that Petitioner is not entitled to habeas corpus relief on any of the grounds listed in his petition. It will therefore be

---

"Article VI – Federal Aid. Any state party to this compact may accept federal aid for use in connection with any institution or program, the use of which is or may be affected by this compact or any contract pursuant hereto and any inmate in a receiving state pursuant to this compact may participate in any such federally aided program or activity for which the sending and receiving state have made contractual provision; provided, that if such program or activity is not part of the customary correctional regimen the express consent of the appropriate official of the sending state shall be required therefor."

[3] "Ground Nine" of the petition actually states the following:

"Violations of Constitutions of both Wisc[onsin] and Minnesota, and violations of 1st, 4th, 5th, 8th, 13th, and 14th Amendments to the U.S. Constitution guaranteed to all Citizens, as well the Fed. Reh. Act; Anti-Slavery Act; and the Americans with disabilities Act. Violating Due Process, Equal Protection, search and siezure [sic], extradition, and attaches Double jeopardy."

As far as the Court can discern, Petitioner has not alleged any new grounds for relief at "Ground Nine" of his petition; he has merely conflated his first eight grounds into one final compilation claim.

recommended that this action be dismissed with prejudice.

## II. DISCUSSION

### A. Form Of Action

Respondents initially argue that habeas corpus relief is not available to Petitioner in this matter because he is not challenging the validity of his underlying Wisconsin state court conviction and/or sentence, nor is he is seeking relief for any "quantum changes in the level of his confinement." Respondents contend that Petitioner is challenging only the conditions of his confinement, which cannot be done in an action brought under the federal habeas corpus statutes, (28 U.S.C. §§ 2241-2255).

It is certainly true that a civil rights action, rather than a habeas corpus action, is the prescribed federal remedy for a prisoner who is challenging the conditions of his confinement rather than the fact or duration of his confinement. As explained by our Court of Appeals,

> "[c]laims challenging conditions of confinement or the method by which a sentence is being carried out may be asserted through a [42 U.S.C.] § 1983 cause of action. However, a state prisoner challenging the fact or duration of a sentence of imprisonment and seeking an earlier or speedier release has a federal remedy through habeas corpus and cannot bring a claim under § 1983."

Williams v. Hopkins, 130 F.3d 333, 336 (8th Cir.), cert. denied, 522 U.S. 1010 (1997) (emphasis added). Where the proper form of action – habeas or civil rights – is debatable, "[i]t is the substance of the relief sought which counts." Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam) (emphasis added).

In this case, while Petitioner may be complaining about the conditions of his confinement, he is seeking no relief other than immediate release from custody. He has

not requested money damages to compensate him for his allegedly wrongful transfer to PCF, nor has he requested injunctive or declaratory relief that would cause him to be returned to Wisconsin. Instead, he is challenging the very fact of his confinement, and he is seeking an expedited release from custody. Simply put, he wants the Warden at PCF to set him free immediately. The federal remedy for such a request is a writ of habeas corpus. Id. ("[t]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody"). Given the type of relief that Petitioner is seeking here, the Court concludes that he has properly presented his claims by way of a habeas corpus petition, rather than a civil rights complaint.

B. Exhaustion of State Court Remedies.

Respondents further contend that if Petitioner's claims can properly be brought in a habeas corpus petition, they must be summarily dismissed because he has not exhausted his available state court remedies. See 28 U.S.C. § 2254(b)and (c); O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1731 (1999); Rose v. Lundy, 455 U.S. 509 (1982). Assuming there are state court remedies available to Petitioner, (as contended by Respondents[4]), the Court will not recommend that the instant petition be dismissed for non-exhaustion, for two reasons.

[4] For the most part, the remedies cited by Respondents are administrative remedies, rather than remedies available in the courts of the states. (See "Respondent's Brief In Support Of His Motion To Dismiss," [Docket No. 11], at pp. 9-10.) Respondents suggest that Petitioner could ask the state courts to conduct "certiorari review" of an adverse administrative agency decision, but it does not appear that such a remedy would be available to Petitioner at this time, because there is no formal administrative ruling for him to challenge. Thus, the Court questions whether Petitioner actually does have any state court remedies presently available to him.

First, the Court is not fully satisfied that the exhaustion requirement is applicable here. Because Petitioner is not challenging the validity of any state court judgment, it may be most appropriate to construe his petition as one brought under 28 U.S.C. § 2241, rather than § 2254. See Montez v. McKinna, 208 F.3d 862, 864-65 (10th Cir. 2000) (describing § 2254 as the proper statutory basis for challenging the validity a state prisoner's conviction or sentence, and § 2241 as the proper statutory basis for challenging the execution of a sentence). If the instant petition is construed to be a § 2241 petition, then exhaustion of state court remedies may not be required, because § 2241 does not include an exhaustion clause comparable to § 2254(b).[5]

---

[5] In Montez, the Court held that "[a] habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254." 208 F.3d at 866. Although Montez cites three cases in support of this conclusion, none of the cited cases actually holds that exhaustion is necessary in § 2241 cases brought by state prison inmates. Two of the cases cited in Montez involved § 2254 petitions, rather than § 2241 petitions, and the third case involved a federal prisoner who was required to exhaust his federal administrative remedies – not his state court remedies.

Several courts have held that state pre-trial detainees must exhaust their state court remedies before seeking relief under § 2241. See Hirsch v. Smitley, 66 F.Supp.2d 985, 986 (E.D.Wis. 1999); Blanck v. Waukesha County, 48 F.Supp.2d 859, 860 (E.D.Wis. 1999); Moore v. DeYoung, 515 F.2d 437, 442 (3rd Cir. 1975); Neville v. Cavanagh, 611 F.2d 673, 675 (7th Cir. 1979), cert. denied, 446 U.S. 908 (1980). Those decisions, however, are based on abstention principles that would seem to apply only when a related state court case is still pending at the time when federal habeas corpus relief is sought under § 2241. Where a prisoner's § 2241 claims are wholly independent of any pending state court proceedings, (which appears to be the case here), exhaustion presumably would not be mandated by abstention principles.

Thus, the Court has found no legal authority, (aside from Montez), indicating that a state prisoner must exhaust available state court remedies before filing a § 2241 petition challenging only the manner in which his sentence is being executed.

Furthermore, even if there are state court remedies available to Petitioner, the instant petition can still be properly adjudicated without exhaustion, pursuant to 28 U.S.C. § 2254(b)(2). That statute allows the Court to sidestep the exhaustion issue, if Petitioner's claims will be rejected on the merits in any event.[6] Because the Court does indeed conclude that Petitioner's claims must be denied on the merits, (for reasons discussed immediately below), this case need not be, and will not be, dismissed for non-exhaustion.

C. The Merits of Petitioner's Claims

**(i) Alleged failure to comply with extradition laws**

Petitioner initially argues that his current confinement is illegal because his transfer to PCF constitutes an extradition from Wisconsin to Minnesota, which was accomplished without following applicable state and federal extradition laws. He contends that Minnesota never issued a valid warrant for his arrest, and that Wisconsin sent him to this state without affording him the protections guaranteed by state law and the due process clause of the federal Constitution.

This argument is clearly without merit, because it is based on the wholly erroneous premise that Petitioner was "extradited" to Minnesota. Extradition is the process by which one state seeks custody of a person found in another state in order to prosecute or punish

---

[6] 28 U.S.C. § 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the states." Section 2241 does not expressly include a provision similar to § 2254(b)(2) – which is not surprising, given that § 2241 does not expressly include an exhaustion requirement. Nevertheless, if exhaustion of state court remedies is required under § 2241, the Court believes that a petition brought under that statute can properly be considered and denied on the merits without exhaustion, (provided no federal abstention principles are implicated), just as permitted by § 2254(b)(2). See Montez, 208 F.3d at 866 (applying § 2254(b)(2) in a case construed to be a § 2241 action).

the person for a crime.[7] Petitioner was not "extradited" to Minnesota, because the State of Minnesota did not ask Wisconsin to send him here to face criminal charges, to fulfill a judgment entered by a Minnesota court, or for any other reason. Because Petitioner was not extradited to Minnesota, he was not entitled to the procedural protections of state and/or federal extradition laws before being transferred to PCF. Thus, the Court finds Petitioner's first ground for relief to be clearly without merit.

**(ii) Alleged denial of liberty interest without due process**

Petitioner's second ground for relief, repeated verbatim, is as follows:

> "U.S. Const., Bill of Rights, Art. 1, sect. 20: 'No Citizen shall be outlawed, nor shall any person be transported out of the State for any offense committed within the same'; and 14th Amendment section 1, and violation of Civil liberty rights, stifling Due Process and its inherent rights governed to all Citizens."

It should first be noted that the language in this claim that is purportedly quoted from the United States Constitution cannot actually be found there. Thus, to the extent that Petitioner is seeking habeas relief based on that language, his claim is patently frivolous.

Petitioner's second ground for relief also refers to "civil liberty rights" and "Due Process." This suggests that he is claiming to have been deprived of some constitutionally protected liberty interest without due process of law. Petitioner certainly has been deprived of a protected liberty interest – that is obvious from the mere fact of his incarceration. He has failed to demonstrate, however, that he was deprived of his liberty without the benefit of due process. "[G]iven a valid conviction, the criminal defendant has been constitutionally

---

[7] Black's Law Dictionary defines "extradition" as "[t]he surrender by one state or country to another of an individual accused or convicted of an offense outside its own territory and within the territorial jurisdiction of the other, which, being competent to try and punish him, demands the surrender."

deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." Meachum v. Fano, 427 U.S. 215, 224 (1976). Petitioner has not identified any procedural deficiency in his state criminal prosecution, so the Court has no basis to conclude that he was deprived of his liberty (i.e., sent to prison) without being afforded due process.

Petitioner may also be claiming that he has been deprived of a protected liberty interest by reason of his transfer to an allegedly less desirable prison facility – namely PCF. If Petitioner is attempting to advance such a claim, however, it must be rejected for two reasons. First, prisoners do not have a liberty interest in being confined at any particular prison, and they can therefore be transferred to a less desirable facility without being afforded due process. "That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." Id. at 225. Secondly, even if Petitioner were entitled to the benefits of due process before being transferred to another prison, the absence of due process would not invalidate his incarceration altogether. If he had been wrongly denied due process before being transferred, he might be entitled to money damages or some form of equitable relief, (presumably a transfer back to his former prison home), but he would not be entitled to the relief he is seeking here – namely an outright release from custody.

Petitioner also alleges in the "supporting facts" section of his second ground for relief that the State of Wisconsin has somehow "lost jurisdiction" over him, by causing him to be

transferred to an out-of-state prison. This argument might warrant greater discussion if Wisconsin had deliberately and voluntarily relinquished its authority to detain Petitioner. See e.g., Shields v. Beto, 370 F.2d 1003, 1005-06 (5th Cir. 1967) (State of Texas was barred, based on waiver, from re-asserting custody of prisoner after voluntarily surrendering him to Louisiana legal authorities and making no effort to re-establish custody until more than 28 years later). It is readily apparent, however, that Petitioner has never been released from custody by the State of Wisconsin. Although he happens to be serving his Wisconsin prison sentence outside the geographical boundaries of that state at this particular time, nothing in the record suggests that the Wisconsin Department of Corrections has relinquished its legal custody of Petitioner. See Blango v. Thornburgh, 942 F.2d 1487, 1491 (10th Cir. 1991) (District of Columbia did not waive jurisdiction over habeas petitioner by transferring him to a federal prison in Leavenworth, Kansas); Joyner v. Henman, 755 F.Supp. 982, 985 (D.Kan. 1991) ("there is no merit in petitioner's claim that the state of Pennsylvania lost all jurisdiction when it transferred him to USPL" [the U.S. Penitentiary in Leavenworth, Kansas]).

Thus, upon carefully considering all of the claims that can be identified in Petitioner's second ground for relief, the Court can find no valid basis for issuing a writ of habeas corpus.

**(iii) Alleged denial of due process based on being sentenced to "The Wisconsin Prison System" – not the Department of Corrections**

Petitioner's third claim for relief is based on a phrase that allegedly appears in his judgment of conviction – namely that he was sentenced to "the Wisconsin Prison System."

This means, according to Petitioner, that he can be confined only in a prison facility that is located in, and operated by, the State of Wisconsin. Petitioner claims that he was unconstitutionally deprived of his legal right to remain in a Wisconsin prison, (as allegedly mandated by his sentence and Wisconsin law), when he was sent to PCF without the benefit of due process.

This argument fails because it is based on a misinterpretation of his sentence and Wisconsin law. The Wisconsin Court of Appeals recently held that a Wisconsin judgment of conviction that sentences a defendant "to the Wisconsin state prisons" merely identifies "the initial place of imprisonment for those who receive sentences of more than one year, thereby differentiating sentences of less than one year, which 'shall be to the county jail.'" Evers v. Sullivan, No. 00-0127 (Wis.App. June 1, 2000), 2000 WL 705340 at ¶ 12. In other words, when a Wisconsin court sentences a defendant to state prison, it is merely indicating that the defendant will not be serving his sentence in a county jail. Evers, a Wisconsin appellate court decision interpreting Wisconsin sentencing procedures, clearly indicates that defendants who are sentenced to the Wisconsin prison system can properly be transferred to out-of-state facilities.

At least one Wisconsin federal court has likewise concluded that neither the language used in a prisoner's sentence, nor state statutory law, gives a Wisconsin prisoner any vested interest in remaining in a Wisconsin state-operated prison facility. Lambert v. Sullivan, 35 F.Supp.2d 1131, 1132 (E.D.Wis. 1999).[8] That court further noted that even if

---

[8] Lambert was brought by a Wisconsin state prison inmate who did not want to be transferred to a private prison in another state. His request for federal habeas corpus relief, and the Court's reasons for denying that request, were summarized as follows:

an out-of-state prison transfer were inconsistent with state law, or the terms of a state sentence, an erroneous transfer could not be corrected in a federal habeas corpus proceeding. Id. ("it is well-established that violations of state law do not provide a basis for federal habeas relief[;] [s]uch violations must be remedied, if at all, in the state courts").

In sum, under Wisconsin law, as interpreted by the Wisconsin state and federal courts, Petitioner was not legally mandated to serve his prison term only in a state-operated prison. He therefore had no state-created liberty interest in remaining in a Wisconsin prison, and it was permissible to transfer him to an out-of-state prison without first affording him due process.

**(iv) Alleged denial of due process and equal protection based on inadequate legal resources at PCF**

Petitioner next claims that he should be immediately released from custody because his transfer to PCF has hindered his opportunities to challenge his criminal conviction in the Wisconsin state courts. He alleges that (a) PCF does not have adequate legal

---

> "Lambert argues that his proposed transfer violates Wisconsin state law because, under that law, he was committed – and is entitled to remain committed – to the custody of the 'Wisconsin State Prisons.' He claims he was never committed to the custody of the so-called 'Wisconsin Department of Corrections' ('DOC') and that any attempt by that entity to transfer him to a facility which is not a 'Wisconsin State Prison' violates both his sentence and Wis.Stat. § 301.21(2m)(a). [Footnote omitted.] Lambert's reliance upon an alleged distinction between the 'Wisconsin State Prisons' and the 'Wisconsin Department of Corrections,' and the legal consequences which flow from the proposed distinction, is excessively literal and finds no support in the relevant statutes."

35 F.Supp.2d at 1132. The claim brought in Lambert is indistinguishable from the one presented here, and this Court finds no reason to deviate from the decision reached by the Wisconsin federal district court.

resources, (e.g., Wisconsin law books), and (b) PCF prison regulations bar him from possessing certain papers that he purportedly needs in order to pursue his ongoing challenges to his conviction.

In essence, Petitioner is claiming that he has been deprived of his constitutional right of access to the courts. See Bounds v. Smith, 430 U.S. 817 (1977). To prevail on such a claim, however, a prisoner must demonstrate some "actual injury." Lewis v. Casey, 518 U.S. 343, 349 (1996). See also, Klinger v. Department of Corrections, 107 F.3d 609, 617 (8th Cir. 1997) ("[i]n Lewis v. Casey, the Supreme Court held, based on principles of standing, that actual injury must be proven in order to prevail on an access-to-courts claim"). There is no "abstract, freestanding right" of access to legal resources; the inmate must show that he has been deprived of some specific opportunity to defend himself, or advance a viable legal claim, in some particular action. Lewis, 518 U.S. at 351; Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam). He also must identify some specific injury resulting from that lost opportunity. Id.

In this case, Petitioner has failed to state an actionable claim for denial of access to the courts, because he has not adequately identified any specific injury to his legal rights that is directly attributable to his transfer to PCF. He has offered nothing more than a conclusory assertion that he has not been able to effectively challenge his criminal conviction since his arrival at PCF. That will not suffice. "[I]n order to establish a claim of constitutional dimensions, an inmate must come forward with something more than vague and conclusory allegations of harm. He must establish some specific prejudice...." Bannan v. Angelone, 962 F.Supp. 71, 74 (W.D.Va. 1996). "Plaintiffs must demonstrate, for

example, that the inadequacy" of access to legal resources "caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim." Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996). See also, Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996). Because Petitioner has not adequately identified a specific "actual injury" to his legal rights, he has not stated an actionable claim for denial of access to the courts.

Furthermore, Petitioner would not be entitled to a writ of habeas corpus even if he could satisfy the actual injury requirement. If he could substantiate a denial of access to the courts claim, (i.e., if he could satisfy the Lewis v. Casey actual injury requirement), he might be able to secure some type of compensatory, injunctive or declaratory relief in an action brought under 42 U.S.C. § 1983. However, Petitioner would not be entitled to outright release from custody, as he is requesting in his present habeas corpus petition.

**(v) Alleged lack of suitable amenities**

Petitioner next argues that he should be released from custody because the State of Wisconsin has disregarded its "constitutional duty for [Petitioner's] best rehabilitation needs." Several state and federal statutes are cited in support of this claim, including the federal "Rehabilitation Act," the ADA, RICO,[9] and Wis.Stat. §§ 302.25(6) and 301.06, (see

---

[9] The federal laws that Petitioner has cited, (the Rehabilitation Act, the ADA, and RICO), have no readily discernible relationship to Wisconsin's alleged "constitutional duty" to meet Petitioner's "rehabilitation needs." The Rehabilitation Act and the ADA, which guaranty certain rights and protections for disabled individuals, have no apparent applicability here, because Petitioner has not shown (i) that he is disabled, or (ii) that he has been deprived of any right or protection guaranteed to the disabled. Petitioner's reference to RICO – a federal criminal statute aimed at fraudulent activities – is wholly inexplicable.

footnote 2, supra). This claim also fails for two clear reasons.

First, Petitioner's claim is based on the assumption that he has a constitutional right to participate in rehabilitation programs -- which simply is not so. Stewart v. Davies, 954 F.2d 515, 516 (8th Cir. 1992) (prisoners do not have any constitutionally protected right of access to rehabilitation programs); Moody v. Daggett, 429 U.S. 78, 88, n. 9 (1976) (same). Second, even if Petitioner could show that he has certain enforceable rights under the laws he has cited, he has failed to explain why a violation of those rights would entitle him to immediate release from custody. Any rights that Petitioner might possess under the statutes he has cited pertain to the conditions of his confinement -- not the fact or duration of his confinement. Therefore, Petitioner would not be entitled to a writ of habeas corpus even if he could prove some violation of his so-called "rehabilitation rights."

**(vi) Fourth Amendment claim**

In his sixth ground for relief, Petitioner contends that he has suffered a "suppression of rights" at PCF, which violates the Fourth Amendment protection against unreasonable searches and seizures. In this claim, Petitioner is merely railing against the many unpleasant experiences that are inherently associated with imprisonment.[10] Loss of rights and freedoms, however, is the very essence of incarceration; it is the heavy penalty that our

---

[10] In the "supporting facts" section of this claim, Petitioner alleges that --

> "Suppression of rights is seizure; the state in their act to simply warehouse is an insipid form of arbitrary government. It is hidden repression in its nature, repression of Due Process, Equal Protection, and Civil liberties; No access to most everything an individual has a right to, governed by many statutory provisions, is siezure [sic] of those rights. It is a siezure [sic] of the dignity of society as a whole, and the very basic nature of a free mind operating in a free society."

society commonly imposes on those who commit serious violations of our laws. Incarceration following a criminal conviction clearly <u>does</u> entail a "suppression of rights," just as Petitioner alleges. But incarceration per se, (following a valid conviction), does not implicate any rights protected by the Fourth Amendment. Furthermore, even if Petitioner could identify some specific Fourth Amendment violation that occurred during his confinement at PCF, he has not explained why he would be entitled to a writ of habeas corpus, and not some other form of relief.

**(vii) Alleged denial of equal protection by reason of transfer to PCF**

In his seventh ground for relief, Petitioner claims that he should be released from custody because he has been deprived of his constitutional right of equal protection. This claim is based on Petitioner's assertion that inmates at PCF have fewer privileges and opportunities than inmates at state-operated prisons in matters such as "work programs, legal access, legal counsel, parole hearings, program review committee, to earn wages, vocational education, treatments, appropriate administrative remedies, [and] access to courts."

Petitioner has failed to state an actionable equal protection claim because there is nothing in the record to suggest that Petitioner is a member of any particular class that has been treated differently from other inmates. <u>See</u> <u>Seltzer-Bey v. Delo</u>, 66 F.3d 961, 964 (8th Cir. 1995) (equal protection claims are properly dismissed when the plaintiff has not "allege[d] any facts to show that he was treated differently from other inmates because he belonged to a protected class"); <u>Klinger v. Department of Corrections</u>, 31 F.3d 727, 731 (8th Cir. 1994) (to sustain an equal protection claim, plaintiff must allege and prove that he

belongs to a group that has been treated less favorably than others who are similarly situated), cert. denied, 513 U.S. 1185 (1995); see also Huebschen v. Dept. of H.H.S., 716 F.2d 1167, 1171 (7th Cir. 1983) (to maintain an equal protection claim, the claimant "must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual").

Assuming that Petitioner has indeed suffered the loss of privileges and opportunities described in his petition, that alone would not be enough to sustain an equal protection claim. To succeed on such a claim, Petitioner would have to show that the deprivations he allegedly has suffered resulted from his membership in some identifiable class. Because Petitioner has not identified any class-based discrimination, his equal protection claim must be denied.

Moreover, even if Petitioner had presented sufficient factual allegations to support an equal protection claim, he still would not be entitled to a writ of habeas corpus. As with most of his other claims, his equal protection claim, if proven, might entitle him to injunctive, declaratory or compensatory relief in a civil rights action. However, he has failed (once again) to explain why he should be released from custody altogether based solely on the conditions of his confinement.

**(viii) Thirteenth Amendment "Slavery" Claim**

Petitioner's eighth ground for relief is based on the Thirteenth Amendment, which outlaws slavery. Petitioner contends that his incarceration at PCF is a form of slavery or involuntary servitude that is prohibited by the Constitution, and that he should therefore be released from PCF immediately. This argument fails because imprisonment as "punishment

for crime" is expressly excepted from the Thirteenth Amendment's general prohibition against slavery and involuntary servitude.[11] Because Petitioner has been convicted of a crime, and he is being confined at PCF as punishment for his criminal conviction, his present incarceration does not violate the Thirteenth Amendment. See Ray v. Mabry, 556 F.2d 881, 882 (8th Cir. 1977) (holding that prison inmates can not only be detained, but can also be compelled to work, without violating the Thirteenth Amendment).

**(ix) Compendium claim**

As previously noted, Petitioner's final ground for relief, ("Ground Nine"), appears to be merely a compilation or compendium of his first eight grounds for relief. (See footnote 3, supra.) The Court has found nothing in Petitioner's ninth claim for relief, that was not previously presented somewhere in his first eight claims. Having determined that Petitioner is not entitled to habeas corpus relief based on any of his first eight claims, the Court finds no reason to separately address a final compendium claim that raises no new arguments. Petitioner's final ground for relief is therefore summarily rejected.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Respondents' motion to dismiss Petitioner's application for habeas corpus relief, (Docket No. 10), be GRANTED; and

---

[11] Section 1 of the Thirteenth Amendment reads as follows:

> "Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." (Emphasis added.)

2. This action be **DISMISSED WITH PREJUDICE.**

Dated: July 24, 2000

JONATHAN LEBEDOFF
United States Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by August 11, 2000, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.